Dear Mr. Boland:
You have requested an opinion of the Attorney General on several issues regarding the appointing authority for the two regional flood protection authorities that were created by Act 1 of the 2006 First Extraordinary Session of the Louisiana Legislature. More specifically you have asked:
1. Is the Board of Commissioners of the Southeast Louisiana Flood Protection Authority East ("SLFPA-E") the "appointing authority" for the employees who formerly answered to the levee boards of commissioners of the East Jefferson Levee District ("EJLD"), the Lake Borne Basin Levee District ("LBBLD") and the Orleans Levee District ("OLD")?
2. Is the Board of Commissioners of the Southeast Louisiana Flood Protection Authority West ("SLFPA-W") the "appointing authority" for the employees who formerly answered to the levee boards of commissioners of the West Jefferson Levee District ("WJLD") and the Algiers Levee District ("ALD")?
3. In exercising their appointing authority, is either of the Flood Protection Authorities statutorily bound to maintain the organizational structure established by the boards of commissioners of the subsumed levee districts?
4. Further, within their respective territories, do the statutes prevent the Boards of the two Authorities from organizing their operations within their respective *Page 2 
geographical territories as they may deem best and as allowed by the rules of the State Civil Service Commission?
5. Further, and more specifically, may each Authority move employees from one area to the next within the larger geographic area of the authority and assign them duties as permitted by Civil Service Rules?
6. If they may, what is the extent of the limitations of La. R.S.38:330.3(B) and how must such limitations be addressed in practice?
Background
Act 1 of the First Extraordinary Session of the 2006 Louisiana Legislature codified at La. R.S. 38:330.1 et seq., created two regional flood protection authorities to govern existing and newly created levee districts in Louisiana's southeastern coastal region,[1] the SLFPA-E and the SLFPA-W. The levee districts within the jurisdiction of SLFPA-E are the EJLD, LBBLD, OLD, St. Tammany Levee District and Tangipahoa Levee District.[2] The levee districts within the jurisdiction of the SLFPA-W are WJLD and District ALD.[3] The levee districts and portions of levee districts listed above comprise the territorial (geographical) jurisdiction of the authorities.
Act 1 further provides that each flood protection authority shall be governed by a board of commissioners,[4] and through its board of commissioners, "shall exercise all authority over and have management,oversight, and control. . . of such levee districts to which theauthority is a successor."[5] The board of commissioners of the SLFPA-E is the successor to the former boards of commissioners of the EJLD, LBBLD and the OLD.[6] The board of commissioners of the SLFPA-W is the successor to the board of commissioners of the WJLD.[7] This means that the Authority Boards, as the statutory successors to the former levee boards, are the governing bodies of the levee districts within their jurisdiction, and now have the same authority, powers and duties as those of the former levee boards. *Page 3 
Questions 1 and 2 Are the Authority Boards of the two regional flood protectionauthorities the "appointing authorities" for the employees of the leveedistricts within their territorial Jurisdiction?
As an initial matter, it should be noted that in the state civil service, the appointing authority is the person or entity with the authority to, among other things, hire employees and determine their duties. Civil Service Rule (CSR) 1.4 states that an appointing authority "means the agency, department, board, or commission, and the officers and employees thereof authorized by statute or by lawfully delegated authority to make appointments to positions in the State Service." An "appointment" is the offer by an appointing authority of employment in a classified position and the acceptance of the offer by a qualified person.[8]
As stated in your letter, prior to the creation of the Authority Boards, the Boards of Commissioners of the levee districts were the appointing authorities for employees in their districts. La. R.S.38:330.6 authorizes the levee boards to "do and perform any and all acts necessary to ensure the thorough and adequate protection of the lands of the district," and mandates the adoption of "by-laws for its own government and for the government of its officers and employees." Pursuant to this language the Boards of Commissioners have always been considered appointing authorities of their employees. As a result, when the new Authority Boards were created and became successors to the former levee boards, it is our opinion that the Authority Boards became the appointing authorities for employees of each levee district within their jurisdiction.
Though you only addressed employees of the levee districts in your request, we note that the Authority Boards are also the appointing authorities of their own employees This authority is granted to the Authority Boards in La. R.S. 38:330.5, which authorizes an Authority to "employ such employees as it deems necessary for its proper functioning" and further provides that "all employees of the authority and each levee district within the territorial jurisdiction of the authority shall be considered civil service employees for the purpose of Article X of the Constitution of Louisiana." Therefore, it is the opinion of this office that the Authority Boards are the appointing authorities for all employees within their jurisdiction, whether they are employees of the Authority or of a levee district within the Authorities' jurisdiction.
Now that we have determined that the Authority Boards are the appointing authorities for all employees within their jurisdiction, we will answer Questions 3, 4 and 5 pertaining to the exercise of the Authority Boards' appointing authority. *Page 4 
Question 3: In exercising their appointing authority, are either of the FloodProtection Authorities statutorily bound to maintain the organizationalstructure established by the boards of commissioners of the subsumedlevee districts?
Question 4: Within their respective territories, do the statutes prevent theBoards of the two Authorities from organizing their operations withintheir respective geographical territories as they may deem best and asallowed by the rules of the State Civil Service Commission?
Question 5: May each Authority move employees from one area to the next within thelarger geographic area of the authority and assign them duties aspermitted by Civil Service Rules?
Upon careful review of the pertinent statutes, we did not find any provision of Act 1 that requires the Authority Boards to maintain the organizational structure established by the former Boards of Commissioners of each levee district, nor did we find any provision that prohibits the Authority Boards from organizing the operations within each levee district in their jurisdiction as they deem best.
Under the CSRs, an appointing authority is given broad authority over all employees, which includes, among other things, the ability to move employees about within its organization and to assign duties to those employees. This extensive authority in managing employees is illustrated in the following Civil Service Rules, which authorize the appointing authority to:
 (a) hire employees and determine the type of appointment (Chapter 8);
 (b) determine an employee's duty station (CSR 8:16);
 (c) determine the duties of an employee (CSR 8:16, CSR 5.2);
 (d) formally rate performance and decide whether the employee is entitled to a merit increase (Chapter 10, CSR 6.14);
 (e) grant or deny pay enhancements (CSR 6.5, CSR 6.16);
 (f) approve or deny leave (Chapter 11);
 (g) determine whether to conduct a layoff and who is to be laid off (Chapter 17).
It is the opinion of this office that the Authority Boards are the appointing authorities for all employees within their jurisdiction; thus, it is our opinion that in accordance with the rules and regulations of the State Civil Service Commission, *Page 5 
the Boards may organize and/or maintain the organizational structure of the levee districts in their jurisdiction as they deem best, subject to the limitations that will be discussed in your next question.
Question 6: What is the extent of the limitations of La. R.S. 38:330.3(B) and howmust any such limitations be addressed in practice?
In answering your final question, we must take a closer look at the language provided in La. R.S. 38:330.3(B), which mandates that proceeds of all taxes collected on all property taxed in the parishes of Jefferson, Orleans and St. Bernard by or on behalf of the EJLD, WJLD, OLD, or the ALD, for the purposes of hurricane and flood protection and all other purposes incidental thereto, shall be administered by the Authority Boards of the applicable flood protection authority.[9] The statute further provides that the proceeds of all taxes collected, levied, or revenue received by an authority or a levee district shall only be used and expended for the purpose of such authority or district.[10]
Additionally La. R.S. 330.3(B)(3) provides, "[t]he proceeds of such taxes collected shall be deposited into a separate account established in the name of the authority or district in which the taxes are levied and collected. There shall be no commingling of funds in such accounts."
It is clear from review of this statute that the Legislature intended to place limitations on the commingling of tax revenue among levee districts. More specifically, Act 1 provides that all taxes levied and collected by the individual levee districts, including the Authority, must only be used and expended for the district or authority in which it was collected. Although the statute allows for an account to be established in the name of the authority or the district, it also provides that there shall be no commingling of funds collected from each district or authority.
As previously stated appointing authorities are granted broad powers over all employees and have the ability to move employees about and assign them duties. Clearly, within each individual levee district, the Authority Board may freely move employees about as it deems best, limited only by the CSRs. However, if the Authority Board desires to send an employee of one levee district to perform duties in a second levee district, in order to comply with the restrictions in La. R.S. 330.3(B), it must take steps to ensure that the funds from the first levee district are not used for the purposes of the second. It is the opinion of our Office that although the statute limits the use of tax proceeds and revenues of the individual *Page 6 
levee districts, practically speaking the Authority Boards can create an organizational structure with the appropriate accounting system to allow the assignment of employees of one levee district to any other district where services are needed to ensure the most efficient management and administration of the Authorities' and levee districts' employees and finances.
We trust this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
With kindest regards,
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 Megan K. Terrell
 Denise B. Fitzgeraid
 LaTonya L. Ozene
 Assistant Attorneys General
[1] La. R.S. 38:330.1(A) and (B).
[2] La. R.S. 38:330.1(B)(1)(a).
[3] La. R.S. 38:330.1(B)(2)(a).
[4] La. R.S.38L330.2(A)(1).
[5] La. R.S. 38.330.1(B) (Emphasis added).
[6] La. R.S.38:330.2(A)(1)(a).
[7] La. R.S. 38:330.2(A)(1)(b).
[8] CSR 1.5.
[9] La.R.S.38:330.3(B)(1)
[10] La. R.S. 38:330.3(B)(2)